CHARLES CHAFFE ET AL. *v.* W. J. HUGHES.

57 256
80 768

1. DEED OF TRUST. *Stipulation to ship cotton or pay commissions.*

    A stipulation in a deed of trust executed by a merchant to secure a *bona fide* debt due a cotton factor, that he shall ship a specified amount of cotton to the latter during the year for sale on commission, or pay the commissions if not shipped, is valid.

2. SAME. *Stipulation as to appropriation of payments.*

    If the stipulation comes after the granting and conditional clauses of the deed, which purports to secure nothing but the debt, the commissions are not ordinarily protected; but a further stipulation allowing the factor at any time to apply payments to unsecured debts without impairing the security, protects any indebtedness arising at or before final settlement.

APPEAL from the Chancery Court of Yalobusha County. Hon. A. B. FLY, Chancellor.

*R. H. Golladay,* for the plaintiffs in error.

The plaintiffs in error would not have accepted the deed of trust or given time to Hughes unless he had agreed to ship the cotton. The stipulation to pay commissions whether the shipment was made or not, was valid. *Lengsfield* v. *Richardson,* 52 Miss. 443. It was for a consideration, and the time of payment was given. The occupation of the respective parties, their situation territorially, and the customs of the business, are in conformity with the contract. There is no complaint in the bill that the notes were given for too much, or illegally discounted. If the commissions were not secured in terms by the deed of trust, that instrument stipulated that the plaintiffs in error might apply payments to any unsecured debt, and they accordingly applied Hughes's payments to the commissions which he owed, leaving the trust-deed unsatisfied. The application can be made now. There is no limit. The latter stipulation makes the trust-deed a security for any indebtedness which arises between the parties prior to a final settlement.

*G. H. Lester,* for the defendant in error.

It is proper, in computing the sum due under the trust-deed, to exclude the damages resulting from not shipping

the cotton. Such sum was not secured by that instrument. If the stipulation as to commissions is legal, the plaintiffs in error can sue for such damages as they can show that they have sustained, but cannot collect the damages by the summary sale enjoined in this suit. The stipulation allowing the plaintiffs in error to apply payments to unsecured debts cannot avail, because the payments were made before the cotton season opened; and long afterwards Hughes, in reply to their first demand for damages for his failure to ship, claimed that he should not be held for the commissions. Hughes never agreed that his property might be sold for his default in shipping. His answer is, *In hæc fœdera non veni.*

CHALMERS, J., delivered the opinion of the court.

This is a bill filed to have entry of satisfaction of a trust-deed, upon the allegation that the debts secured by it have been paid. The facts are as follows: W. J. Hughes, a merchant in Water Valley, executed for the benefit of Chaffe, Hamilton & Powell, a firm composed of Charles Chaffe and others, cotton-factors in New Orleans, a trust-deed upon real estate, to secure payment of two notes, aggregating two thousand eight hundred and fifty-seven dollars, and bearing interest at the rate of ten per cent per annum, and a further advance thereafter to be made of fifty dollars. The trust-deed contained a further stipulation that Hughes should ship to the New Orleans firm at least two hundred and fifty bales of cotton during the year, for sale on commission, and that he should pay commissions at two and one-half per cent, on the value of that amount of cotton, whether in point of fact he should ship so much or not. Finally it was expressly agreed that all payments made by Hughes, whether in money or by the delivery of cotton, should be applied as the New Orleans firm saw fit; and whether applied to the debt secured or to any other debt then existing or thereafter to accrue between the parties, such application, no matter when made, or to which account credited, should not in any manner operate to impair, lessen, or prejudice the debts secured and intended to be secured by the instrument or the security thereby provided. Twelve

bales of cotton only were shipped by Hughes during the year, but the notes and further advances specially protected by the instrument were paid in money, or very nearly so (we have not made an accurate calculation as to this). Nothing was paid on the claim for commissions on cotton not sent, and the validity of this claim, and the question whether it is protected by the trust-deed, are the principal issues presented by the record.

Neither in the granting nor in the conditional clauses of the trust-deed is there any allusion to this obligation to pay commissions on cotton not sent, nor are any debts specified as protected by it save the notes and the future advance of fifty dollars. The obligation to send the cotton, and to pay commissions on it whether sent or not, comes after the granting clauses of the deed, and also after the clauses providing for a sale of the property upon default made in payment of the notes and the fifty dollars advance ; and but for the provision giving power to the creditors to apply payments to any indebtedness existing between the parties, it is clear that an indebtedness springing out of a failure to meet this obligation would not be protected by the instrument. But this provision is both comprehensive and explicit. It provides that the creditors " shall have the exclusive right to apply the net proceeds of sale of all cotton shipped, and all payments of money made, to the payment of any indebtedness which may be due now or which may hereafter become due ; " that such application may be made at any time, and shall not in any manner impair or lessen the security created by the instrument. Plainly this transforms it from a mortgage for the protection of certain specified debts into a security for any valid indebtedness that may arise between the parties before or even at the time of a final settlement between them. If, at the date of making such settlement, the creditors should discover an indebtedness of any sort which had been previously overlooked, or which then for the first time arose, they would have a right to apply any payments which had been previously made to this new indebtedness, and still leave the security in full force as to the particular debts specified in the deed. This is the same thing as declaring that the instrument shall protect any and all debts

that may arise and remain unpaid at the time of final settlement between the parties.

The only question therefore to be determined is, whether the stipulation that the debtor should forward a certain amount of cotton, and, if he failed so to do, should pay commissions on it as if it had been sent by him and handled and sold by his factors, is valid, and imposes a legal liability upon the debtor if unfulfilled. This question, novel in this State, we find settled by the Supreme Court of the United States in *Cockle* v. *Flack*, 93 U. S. 344. It is there held that, if it appears from all the facts in the case that such a contract has been entered into with no expectation on either side that the produce shall in fact be forwarded, but as a mere device to enable the lender of money to obtain an usurious rate of interest, it will be void; but that if made in good faith between parties, one of whom is engaged in forwarding and the other in selling the articles specified upon commissions, it will be valid. It is said that in such cases there is something more than a mere loan of money; there is a combination of the money advanced and of the attention and skill promised in selling the produce. The factor has provided himself with clerks and a place of business. At heavy expense, and perhaps by the payment of license fees, he has placed himself in condition to transact such business as may be intrusted to him. A part of the necessary outfit for doing so is his money, or the credit that will enable him to procure it. Another essential element is the preparation and capacity to transact the business. When therefore he is applied to for the one, he may well estimate something for the exercise of the other, and stipulate that, while his money brings him lawful interest, his skill and business preparation shall yield something additional. The expense of making the preparation has already been incurred, and as he stands ready to exert the skill, the party who has failed to call for its exercise cannot complain that he obtained no benefit from it, when he has expressly contracted that he will pay whether he obtains its benefits or not. This reasoning we deem satisfactory, and as there is nothing in the case at bar to suggest a device to evade the usury laws, but every thing to show a *bona fide* expectation of receiving and selling the cotton, we hold the

stipulation valid, and the liability incurred by its non-fulfil-
ment as covered by the trust-deed.

The decree of the Chancellor, not being in accordance with
these views, is reversed, and the bill dismissed.

*Decree accordingly.*